JESSEN LIQUOR COMPANY, Appellant, v. PHOENIX DISTILLERY
COMPANY et al., Appellees.

**REPLEVIN:** Nature of Action—Off-sets—Issues Allowable. Mat-
ters which are not pleaded and which cannot properly be pleaded
in an action of replevin (Sec. 4164, Code, 1897) cannot be de-
terminative of the right to maintain the action.

PRINCIPLE APPLIED: Defendant, as agent of plaintiff,
shipped plaintiff's property to him (plaintiff), but in so doing
made advancements for the plaintiff and claimed the right to
the possession of the property until the advancements were paid.
Plaintiff brought replevin, simply claiming absolute ownership
and the right of possession. At the trial, plaintiff attempted to
neutralize defendant's claim for advancements by showing that
defendant was indebted to plaintiff on a former and different
transaction. *Held*, such matter was wholly immaterial because
plaintiff (a) did not plead it, and (b) could not properly plead
it under Sec. 4164, Code, 1897.

**PRINCIPAL AND AGENT:** Lien of Agent—Expenses and Advance-
ments—Replevin. An agent has a particular lien upon the goods
of the principal lawfully in his possession as agent for the
amount due him as agent in respect to the property subject to
the lien.

PRINCIPLE APPLIED: The principal bought eleven barrels
of whisky in bond, agreeing to pay the Federal revenue tax when
it was unbonded. He directed his agent to pay the tax and draw
draft with bill of lading. The agent did so, attaching the draft
to the bill of lading. The principal refused to pay the draft.
*Held*, the agent had a lien on the whisky both (a) at common law
and (b) under the express terms of the correspondence.

**JUDGMENTS:** Form—Replevin. It is immaterial that the final
judgment in a replevin action was labeled a ''decree,'' the matters
therein contained being such as the law commanded. The law
concerns itself with the substance, not the shadow of things.

*Appeal from Pottawattamie District Court.*—HON. E. B.
WOODRUFF, Judge.

MONDAY, JUNE 21, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION in replevin to recover the possession of personal property. Trial to court without jury. Judgment for defendant and plaintiff appeals. The facts are stated in the opinion.—*Affirmed.*

*Mayne & Green,* for appellant.

*W. S. Stillman,* for appellees.

WEAVER, J.—The defendant distilling company, doing business at St. Louis, Missouri, owned quantities of barrelled whisky stored in a government warehouse at that place. In July, 1912, defendant sold to the plaintiff, a dealer in Council Bluffs, eleven barrels of whisky and received payment therefor at the agreed price. The sale was made in bond and subject to the payment of the Federal revenue tax by plaintiff. The transaction was evidenced by the delivery by defendant to plaintiff of warehouse certificates or receipts for the requisite number of barrels, the intention being that the goods would be withdrawn from storage by the plaintiff at its convenience or upon its order and the payment of the revenue tax. About the time of the sale or soon thereafter, plaintiff cálled for and received six barrels of the whisky and paid the tax thereon. On September 13, 1912, plaintiff wrote to defendant, enclosing the warehouse receipts for the remaining five barrels, and saying:

"Enclosed find warehouse receipt for 5 bbls. Please pay tax and ship us these five bbls. reduced to 95 proof. Draw on us through the Commercial National Bank with B/L for the tax. Please do not delay as we have the most of it sold."

On September 14, 1912, the defendant acknowledged receipt of the letter and added:

"To facilitate your unbonding we would kindly ask you to send us your check for $250.00 to cover the government tax which is approximately the amount on five barrels of whisky. Whatever the difference may be, should there be any we shall account for same.

"The distillery is now unbonding hundreds of barrels of whisky each day which means an outlay of thousands of dollars for the government tax and they have therefore now made a strict rule that the government taxes must be sent in before the whisky is unbonded.

"Kindly send us in your check at once so that there is no delay for you in getting your goods."

To this the plaintiff responded as follows:

"This is a unusual request we have unbonded many a hundred bbls. of whisky and this is the first instant that we ever was called on to advance the money for unbonding. We will pay draft with B/L and if you won't do that send us the original warehouse receipt and we will unbond it ourself at the distillery. Hoping you will attend to this at once, and oblige."

Thereupon, the defendant closed the correspondence with a letter to the effect that it would attend to the matter of unbonding the whisky as requested and draw on plaintiff for the amount of the tax. Defendant then proceeded to pay the tax on the liquor, $248.19, and having forwarded the shipment to Council Bluffs, sent the bill of lading, accompanied by a draft for that amount, to a bank for collection and delivery. The shipment having reached its destination, plaintiff paid the freight charges, but as it refused to pay the draft except upon a reduction of an amount to cover damages alleged to have been sustained because the first shipment was of a poorer grade or quality of whisky than it purchased, the bank declined to deliver the bill of lading and the railway company held the goods, awaiting settlement

of the controversy. The plaintiff then brought this action, claiming to be the unqualified owner and entitled to the possession of the goods, which it alleged were wrongfully detained by the carrier under instructions from the defendant distillery company to withhold delivery until plaintiff paid its demand. It was further alleged that the sum so demanded was not due or owing the distillery company and that the possession of the goods was wrongfully retained for the purpose of forcing the plaintiff to pay an amount of money which it did not owe. The distillery company appeared to the action and answered and pleaded the facts of the transaction substantially as we have stated them and asserted its right to withhold the delivery of the shipment until plaintiff had repaid the amount of money which defendant had advanced to take the goods out of bond. A jury was waived and cause tried to the court, resulting in judgment for defendant, as already indicated. There is little or no substantial dispute concerning the facts set out in the foregoing statement.

Upon the trial, in justification of its refusal to pay the amount of the draft, plaintiff introduced evidence tending to show that the warehouse certificates for the eleven barrels of whisky described the same as having been put in bond in the year 1909; but that when defendants, at plaintiff's request, unbonded and shipped the first six barrels, they proved to have been bonded in 1911; and that the difference in age made a difference in the market value of the whisky to the amount of 30 cents per gallon, and plaintiff was damaged to that extent. Whether there has been any dispute or controversy between the parties over this alleged difference in age and value of the whisky is not shown in evidence, but it is conceded that plaintiff requested and procured the defendant to pay the tax upon the last five barrels for the undisclosed purpose of getting possession of them and thereby forcing the defendant to seek its remedy in the courts of this jurisdiction, if it is desired to contest the claim for damages. Upon the record so made, the trial court found for the

defendant and entered judgment against plaintiff for a return of the property taken on the writ, or in default thereof, for the recovery of the full amount of the draft and for costs.

The one question presented is whether, upon the undisputed facts, the plaintiff was entitled to the possession of the property without paying the amount of the defendant's draft which accompanied the bill of lading.

I. It will be observed from the foregoing statement that the issues disclose an ordinary action in replevin, in which the plaintiff asserts absolute ownership and right of possession of the goods described and the defendant pleads a right of possession until it is repaid the money which it advanced, at plaintiff's request, in obtaining such possession

1. REPLEVIN: nature of action: off-sets: issues allowable.

from the bonded warehouse. The controversy between the parties over the first shipment is not mentioned in the pleadings, and plaintiff's claim for damages in that transaction is nowhere pleaded or put in issue. Indeed, under our practice act, as is well understood, there can be no joinder of causes of actions not of the same kind in an action of replevin, nor is any counterclaim allowed. Code, Sec. 4164. For the double reason, then, that the question of damages to plaintiff on account of matters relating to the first shipment is not put in issue by the pleadings, and that such issue could not properly be joined with an action for replevin of the goods constituting the second shipment, it must be held that plaintiff's right, if any, to recover damages of that nature is in no manner determinative of his right to maintain this action.

II. The one question to be determined in replevin is the right to the possession of the property in dispute at the time the action is commenced. That plaintiff had then the general ownership may, for the purposes of this case, be conceded, and this ownership carried with it the right to possession unless, under the admitted facts, defendant could properly retain the possession in its own hands or in the hands of the

2. PRINCIPAL AND AGENT: lien of agent: expenses and advancements: replevin.

carrier until repaid the advancements it had made. That it had such right of detention is not open to reasonable doubt. In the first place, an agreement that defendant might thus secure itself for its advances is implied, if not expressed, in the written agreement which is evidenced by the letters passing between the parties. The duty to pay the tax rested upon the plaintiff and not upon the defendant. In withdrawing the goods from bond, the defendant was acting as the agent of plaintiff, and there is no better settled principle of the law of agency than that by which, where an agent is entitled to compensation or reimbursement on account of advances made at the principal's request, and the property of the principal with reference to which the advancement has been made is in the agent's hands, he has a lien thereon for the amount which entitles him to retain the possession until his claim is paid. In 1 Clark & Skyles on Agency, Sec. 373, the rule is stated as follows:

"An agent who performs services for another, and as a result thereof comes into the possession of property or funds for his principal, has a lien on such property or funds for his compensation, advances and expenditures in the transaction; or, in other words, he has a right to retain such property or funds until his claim   .   .   .   is satisfied, provided his services, advances and expenditures were proper, necessary and incidental to his due execution of the agency."

Other authorities need not be cited in support of this elementary principle. Assuming, as we must, that the parties knew the law in this respect and were doing business with reference thereto, it must be said that plaintiff, by requesting the defendant to pay the tax and forward the goods, made the defendant its agent for that purpose and clothed the latter with the right and authority to assert a lien upon the goods for its advances. Moreover, the plaintiff's letter asking the defendant to make the advance and send draft for the amount with bill of lading may fairly be construed as

express authority to hold the possession of the goods until the advances were repaid.   Plaintiff must have well understood the common custom and usage of the business world by which a shipper who desires to avoid risk of nonpayment of his charges upon goods shipped to a consignee sends the bill of lading accompanied by a draft for the amount of such charges to a bank or other correspondent, with directions to deliver the bill only upon payment of the draft.   In such case, the shipper retains a qualified title or interest in the shipment to secure payment of his claim, and as a general rule at least, neither the carrier nor the bank has any authority to deliver the goods or surrender the bill of lading until the draft is paid; and until such payment is made, the consignee has no right of possession upon which to sustain an action in replevin.   In explicitly directing and authorizing the defendant to ship the goods and send draft with bill of lading to the bank for collection, and in again promising to "pay the draft with B/L," plaintiff assumed an obligation to take up the draft as a condition precedent to the delivery of the shipment.   That promise is not redeemed or fulfilled by saying to the defendant or its correspondent bank that the plaintiff has an unliquidated claim for damages to an amount which, if allowed, will be equal in whole or in part to the draft, of the acceptance of which it had given repeated assurance.   We may also add that the fact that, in all this correspondence, plaintiff studiously avoided any mention of its claim for damages upon the first shipment and that it repeatedly promised to pay the draft with bill of lading, while cherishing a secret purpose not to pay more than a fraction thereof, and that it knew, as it must have known, that, if such purpose were understood by defendant, it would have promptly refused to make the advancement at all, clearly evinces an intent to mislead, and it is but just that the agreement so procured be enforced in the sense and to the extent which plaintiff knew it was understood by the defendant.

III. Plaintiff seems to labor under the impression that

defendant is here asserting a right to be subrogated to the lien which the government of the United States held upon the barrels of whisky for the payment of the revenue tax. We do not understand the defendant to urge any such right or claim, and for the purposes of this case we may assume that there can be no such subrogation. But, as we have said already, the common-law right to a lien (which is here nothing more than a right under certain circumstances to retain possession of an item of personal property until the claim of the possessor for some service or expense or advancement with reference to such property has been satisfied) is one which the defendant may, in this case, properly invoke. When this action was begun, defendant's claim had not been paid, and the lien therefor still attached. Plaintiff having failed to establish its alleged right of present possession at the time this action was begun, the judgment for defendant was properly entered.

Complaint is made that, while this is undoubtedly an action at law, the court below entered a decree as in equity. The fact that the record entry is labeled "decree" is imma-

3. JUDGMENTS: form: replevin.

terial. The substance of the entry is a judgment at law that plaintiff is not entitled to recover the possession of the property and that defendant be awarded a return thereof, in default of which it shall recover the value of its interest therein, which is the amount of the advancements made at plaintiff's request, and for costs. This is the ordinary judgment in replevin cases where the finding or verdict is against the plaintiff, and we discover nothing therein to which any just exception can be taken.

It follows that the judgment below must be and it is hereby—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.