DROGE ELEVATOR COMPANY, Appellant, v. FRED JACKSON et al., Appellees.

**REPLEVIN:** Collecting Counterclaim Under Cover of Writ. One who *would be* the absolute owner and entitled to the immediate possession of personal property if he paid a certain purchase price, may not maintain replevin on the theory that he is such owner and entitled to such possession because he tendered a sum of money which, when added to the damages suffered by him in *another* transaction between him and the seller, equaled the said purchase price.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 13, 1921.

REHEARING DENIED MAY 15, 1922.

ACTION in replevin, to recover possession of a carload of hay. Trial to a jury. At the close of plaintiff's testimony, a verdict for defendant was returned, by direction of the court. Facts are stated in the opinion. Plaintiff appeals.—*Affirmed.*

*Kimball, Peterson & Smith,* for appellant.

*W. H. Killpack* and *T. O. Tacy,* for appellees.

ARTHUR, J.—Defendant Fred Jackson was a resident of

Monona County, Iowa, and there had the straw and hay involved in this action. Plaintiff was a resident of Council Bluffs, Iowa, where he maintained a place of business. A conversation was held, by telephone, between plaintiff and defendant Jackson, whereby plaintiff purchased from Jackson several cars of wheat and barley straw and one car of hay. No particular or designated lot of straw or hay was purchased. After the telephone conversation, on the same day, plaintiff wrote Jackson a letter, confirming the purchase of straw and hay, for two to three carloads of sound wheat straw at $10 per ton; two to three carloads of sound barley straw at $10 per ton; and one carload of bright bottom hay at $18 per ton. In pursuance of the telephone conversation and the letter, defendant Jackson shipped seven cars of straw, one at a time: the first one on January 21, 1918, and the last one on January 25th. Jackson sent the bill of lading for each of the seven shipments of straw, with sight draft attached, to the Commercial National Bank of Council Bluffs. Jackson made himself consignee of the shipments. On February 1st, about a week after the last carload of straw was shipped, defendant shipped the car of hay in controversy; and, as in each of the preceding shipments of straw, sent the bill of lading, with sight draft attached, to the same bank. The drafts for the seven carloads of straw were paid by plaintiff to the bank, and the bills taken up and the straw received, upon the payment of freight by the plaintiff. A day or two before the car of hay arrived, plaintiff had discovered, so it claims, that a portion of the straw shipped in four of the cars was defective, was wet, heated, black, dirty, moldy, and worthless, and could not be used. The amount of straw of the several shipments which plaintiff claimed was spoiled and worthless was 45,240 pounds, for which plaintiff had paid $226.20; but at the time this suit was instituted, plaintiff had discovered worthless straw in the amount of only 36,000 pounds, for which he had paid $180. In his petition, plaintiff alleged the value of the shipment of hay to be $197.46, which was the amount of the draft sent to the bank for collection.

In his answer, defendant Jackson admitted the value of the hay to be as alleged by plaintiff, $197.46. Defendant direc-

tor general of railroads answered, disclaiming any interest. When plaintiff discovered that there was some spoiled straw, it called Jackson up over the telephone, and plaintiff says that Jackson agreed to go to Council Bluffs and try to adjust matters; but that he never did go to Council Bluffs; and that there was no adjustment of the matter of the spoiled straw. These conversations, however, were before the hay was shipped. All of the straw had been paid for and received by the plaintiff before discovery was made of any spoiled straw. When the carload of hay in controversy arrived, plaintiff paid the freight on it, and then went to the Commercial National Bank, where the draft and bill of lading were held, and made a tender, in writing, of $17.46 in cash, that being the price of the car of hay, which was $197.46, less $180. The $180 of the tender plaintiff considered and treated as an "overpayment" on the shipment of straw, as plaintiff says, "due to failure to perform the contract, due to damaged conditions of the straw." Plaintiff offered evidence to show that 45,240 pounds of the straw, out of four of the seven cars of straw, were spoiled and worthless, for which it had paid $226.20.

As mentioned above, at the time this suit was commenced, it had been discovered only that there were 36,000 pounds of spoiled straw, and the tender was made on that basis. The same tender was made to the railroad company as was made to defendant's agent, the bank. Upon refusal of the tenders, this suit was begun, plaintiff alleging in its petition that it was the absolute and unqualified owner of the car of hay involved, by purchase, and entitled to immediate possession. Plaintiff alleged the cause of detention to be a dispute as to the amount claimed to be owed to the defendant by plaintiff, plaintiff claiming that it owed Jackson only $17.46, which it tendered, and Jackson claiming that plaintiff owed him $197.46, the full value of the car of hay.

At the close of plaintiff's testimony, defendant Jackson moved to strike from the record all testimony offered by plaintiff as to spoiled straw or alleged damage to the straw in the previous shipments, for the reason that it was incompetent and immaterial, and had been aptly objected to by defendant at the time it

was offered, and immaterial for the reason that it could not be properly offered in this case, because it was in the nature of a counterclaim presented by the plaintiff against the defendant as a matter of payment for a shipment of hay; and moved the court to direct the jury to return a verdict for the defendant, finding that the plaintiff was not entitled to the immediate possession of the hay at the time of the commencement of the action, and finding that defendant was entitled to the possession, and finding the value of the hay to be in the amount stated in the petition and admitted by defendant, for reasons, in substance, as follows: That plaintiff based its right to possession of the property upon an allegation that it was the absolute and unqualified owner of the hay, making no other statement of facts constituting its right to possession, and that it is, therefore, limited to proof of absolute and unqualified ownership of the property, as a basis for right thereto; and that the record showed that plaintiff was not the absolute and unqualified owner of the property, and could not recover upon that allegation; that the record shows that Jackson was the owner of the hay and entitled to its possession; that the hay had been shipped upon a bill of lading in which the consignor was named as consignee; that the hay had not been paid for; that the bill of lading had never been delivered to the plaintiff, and it was not entitled to a delivery of the same; that it appeared that the hay, at the time of the purchase, had not been identified specifically, or segregated as a particular body of hay to be shipped to plaintiff, and had never been appropriated to it; and that plaintiff was not, therefore, the owner, or entitled to the possession of the same.

The motion was sustained, and a verdict returned by direction of the court for the defendant, and judgment rendered thereon, from which this appeal is prosecuted.

As observed above, the contract was silent concerning the drawing of any draft and attaching a bill of lading thereto; but this procedure had been followed as to the seven carloads of straw which had previously been shipped and received, and, so far as the record discloses, with no objection on the part of the plaintiff. The plaintiff bases its claim to the right of possession

of the hay upon ownership. It claims that it became the owner of the property, and therefore entitled to its possession; and the real question before us is whether it can sustain that position in the manner sought. Ordinarily, the bill of lading and the possession of it are symbolical of possession of the property covered by the bill. The bill of lading, in business, represents the property, and he who has the bill of lading, generally speaking, is entitled to the possession of the property. Under the "Uniform Bills of Lading Act" [Section 3138-b40 (a), Supplement to the Code, 1913], plaintiff was bound to assume, from the draft, "that the seller intended to require payment of the draft before the buyer should be entitled to receive or retain the bill." But this act need not be resorted to in the instant case; for the plaintiff concedes, by its acts and procedure, that defendant Jackson was entitled to retain possession of the hay, and was not bound to deliver possession until the purchase price of the hay was paid, and the freight; for plaintiff did pay the freight, and its claim is that it paid the purchase price of the hay, excepting $17.46, which it tendered in cash. Now the question presented is whether plaintiff may show payment on the purchase price of the hay, in the amount of $180, by showing that straw received in previous shipments, of the value or agreed price of $180, was lost to it by reason of its being spoiled and worthless when it reached its destination. Plaintiff styles the $180 as an "overpayment" on the straw, and claims that it serves as a payment on the hay. Whatever plaintiff may call it, averring that straw of the value of $180 was spoiled and worthless when received, when it was warranted to be "sound straw," and that he sustained a loss of $180, is, in substance and in fact, alleging a cause of action for breach of the contract, entirely separate and distinct from a replevin action, and is "not of the same kind." Code Section 4164. In fact, plaintiff was saying, by presenting the issue in evidence, that, if his claim for damages in the amount of $180 was allowed, then he had bought and paid for the hay, and for that reason he was the absolute and unqualified owner, and entitled to the immediate possession of the hay. His claim for damages was an unliquidated claim, and must be litigated and determined before it

would be known whether it was a claim that should be allowed; and he had no right to litigate it in this replevin action.

*Jessen Liquor Co. v. Phoenix Distillery Co.*, 171 Iowa 505, is a case squarely in point and controlling, and rules an affirmance of the holding of the trial court in the instant case. *Jones v. Peterson*, 170 Iowa 1, relied on by counsel for plaintiff to support their position, does not hold contrary to the *Jessen* case. In the *Peterson* case, plaintiff claimed that he was entitled to a deduction on account of a shortage of parts of machinery shipped to him. Counsel argues that such claimed deduction was the same as the claim in the instant case, based on loss because of spoiled straw. But on the final submission of the *Peterson* case, there was no dispute or controversy about the missing machinery item. In the *Peterson* case, long after the action was begun, when plaintiff filed a substituted petition, he for the first time presented and deposited in court the sum of $230, which was the balance of the admitted cash difference to be paid by him in the trade. This cash tender covered all that plaintiff owed, according to contract, in cash—not by reason of any claimed deduction. But it was not made before commencement of the action.

We deem further discussion of the case unnecessary. The judgment of the court below is affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.